VAN LEAR (DODGE v.). Case See No. 3,-956.

---

## Case No. 16,862.

### VAN LIER v. DORD.

[Betts' Scr. Bk. 214.]

District Court, S. D. New York.    April 8, 1851.

SHIPPING — ILLNESS OF MASTER — LIABILITY OF OWNER FOR MEDICAL ATTENDANCE.

The owner of a sea-going vessel is liable for the expenses of medical attendance rendered the master on board the vessel in a sickness incurred in her service. The master having been attacked with cholera in port, before the vessel was unladen. and having died on board, *held*, that the physician could recover from the owner a reasonable compensation for his attendance on the master during that illness.

[This was a suit by Martinus A. Van Lier against Claudius Dord, owner of the brig Palmetto, to recover for medical services rendered to the master of the brig.]

BETTS, District Judge.    E. H. Johnson. the master of the brig, came into this port in command of her, in the month of August, 1849. This is her home port. It was not proved that this was the residence of the master. His wife was here at the time, but lodged at a hotel. The master, whilst in command of the brig, was taken sick with the cholera, and was attended on board the vessel by the libellant, a regular physician of the city. The disease was very evident. and the attendance of the libellant was assiduous, he having staid on board one night with the patient, who lived two days and one night. The physician called in to consult with the libellant stated the case was very critical, and that the services of the libellant were worth $50. A part of the crew were on board the vessel, but it did not appear whether her cargo was discharged or not.

The only point made in the case for the defendant was. that the ship or owner is not by law responsible for the cure of the master, taken sick on board her. and in her service. This point was fully settled by Judge Story, in the case of The George [Case No. 5,329], and he insisted that the rule of the maritime law in respect to the cure of seamen embraced the master equally with the crew. I find no other decision in which the precise question arose. The doctrine as applicable to seamen meets the approbation of commentators generally (Curt. Merch. Seam. 108, and the foreign codes cited; Abb. Shipp., by Perkins, 259, note 1; 3 Kent. Comm. 184); and it seems a fair sequent to the privilege in respect to them, that it should extend to all concerned in the navigation and preservation of the ship and cargo. The reasonable presumption that seamen make their contracts with a view to this privilege as part of their compensation ought to embrace the master equally with the crew, and if it is not intended he should be placed on the same footing with the sailors the owners may easily provide for the exception by express agreement with him. The right is not limited to the service of seamen abroad. It is enforced in their favor in their home ports also. Reed v. Canfield [Case No. 11.641].

Without entering into a discussion of the general principles upon which the allowance is founded in the maritime courts of commercial nations, I shall, until higher authority is produced against the allowance, follow the views of Judge Story. and hold the libellant entitled to be paid for his attendance and the medicine furnished the master by the

owner. The value of this upon the evidence is at least $50.

Decree for $50, with interest from Sept. 5, 1849, the time the suit was commenced, and costs.